David HETLAND; Celeste Hetland, husband and wife, and their marital community Plaintiffs–Appellees,

v.

LINCOLN LOGS LTD., a New York Corporation Defendant–Appellant.

No. 01–35044.

D.C. No. CV–00–0090–MJP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 2002.

Decided July 1, 2002.

Before BROWNING, B. FLETCHER and GOULD, Circuit Judges.

### MEMORANDUM *

Appellant Lincoln Logs Ltd. ("Lincoln") challenges the district court's order grant-ing appellees David and Celeste Hetland's ("the Hetlands") motion to compel arbitration. Having reviewed *de novo* the district court's decision to compel arbitration, *Chiron Corp. v. Ortho. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000), we conclude that the Hetlands failed to comply with the arbitration clause requirements of the contract between the parties, and reverse the district court's order compelling arbitration.

This court has jurisdiction under 28 U.S.C. § 1291.

In April of 1993, the Hetlands, in their capacity as owners of Lincoln Pre–Cut Homes, Inc., entered into two separate agreements—a Production Agreement ("PA") and a Trademark Sale Agreement ("SA")—with Lincoln, a publicly traded corporation engaged in the manufacture of log homes. At the time the agreements were executed, Pre-cut was in Chapter 11 bankruptcy proceedings. The SA assigned Pre-cut's federal trademark rights in the trademark "Lincoln" to a new corporation, Lincoln Holding Corp., to be jointly and equally owned by the Hetlands and Lincoln. The PA, created in partial consideration of the transfer of ownership of the trademark, provided that the Hetlands produce log wall products for Lincoln according to specifications provided by Lincoln.

Soon after the contracts were executed, Lincoln claimed that the Hetlands were in breach for failure to perform their obligations under the PA. Pursuant to requirements of the PA, Lincoln sent "notices" claiming the Hetlands had not performed as required by the contract. These "notices to cure" were sent on October 15, 1993 and November 25, 1993. According to Lincoln, the Hetlands failed to respond to these notices, neither seeking arbitration nor acting to cure.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

On January 21, 1994, Lincoln's CEO informed the Hetlands, by letter, that their relationship was terminated immediately.

Lincoln claims that such termination was necessary to prevent further economic harm to its company; the Hetlands claim that this termination left their business "financially ruined."

The following November, the bankruptcy court approved a settlement between the parties, recommended by the trustee, whereby in exchange for a payment of $37,000 to the Hetlands' bankruptcy Estate, the Estate released its security interest in the trademark.[1]

On January 19, 2000, just prior to the end of the six year statute of limitations for breach of contract claims under Washington law, RCW 4.16.040(1), and without any prior efforts to seek arbitration under the terms of the contract, the Hetlands filed a complaint in federal district court alleging that Lincoln's termination of the Production Agreement constituted a breach of contract. In their complaint, the Hetlands sought to compel arbitration of their claim for damages allegedly caused by Lincoln's termination of the PA in violation of the contract's arbitration clause.

On December 15, 2000, the district court issued its decision on Hetlands' motion to compel arbitration and Lincoln's cross-motion for summary judgment. Relying on the PA's "broad arbitration clause," and noting that the district court has "little discretion to deny an arbitration motion," (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)), the court ordered that the parties proceed to arbitration in accordance with the arbitration agreement.

Lincoln appeals that decision.

Two provisions of the PA are relevant to the dispute before us. First, under § 10(b) of the PA, titled *"Cancellation,"* the parties agreed to the following:

> In the event that Hetland is unable to meet the Company's [Lincoln's] production services needs, the Company shall notify Hetland and give him ten (10) days notice to cure any such deficiency; in the absence of which the company shall then have the immediate right to terminate this Agreement.

Lincoln contends that pursuant to this clause, it was within its right to unilaterally terminate the contract without resort to arbitration.

Second, in addition to agreeing, at § 19, that the PA "shall be governed by and construed in accordance with the laws of the State of Washington," under § 17 of the PA, titled *"Arbitration,"* the parties also agreed to the following:

> Any dispute arising pursuant to this Agreement which cannot be resolved by the parties themselves shall be settled by arbitration to be held in the State of Washington. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision reached by such arbitration shall be final and binding and may be filed with the clerk of any court of competent jurisdiction and a judgment confirming such decision may, if desired by any party to the arbitration, be entered in such court.

The Hetlands contend that Lincoln's unilateral termination violated this broad arbitration clause.

Although the arbitration clause may be controlling, and its meaning clear, the Het-

---

1. In its order approving the trustee's proposed settlement, however, the bankruptcy court explicitly stated, "Provided that neither the settlement nor this order shall result in the determination of any default under the Trademark Sale Agreement or the Production Agreement." The court informed the Hetlands "your rights are not being foreclosed by this settlement," and "you're free to pursue whatever individual rights you still have."

lands did not abide by its terms. By the terms of the contract, the parties agreed that while arbitration shall be "*held* in the State of Washington," any arbitration process is to be "*conducted* in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (emphasis added). Instead of focusing, as the district court did, on the requirements of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, we need only look to the Commercial Arbitration Rules of the American Arbitration Association ("the Rules"), which the parties explicitly agreed to be bound by with respect to arbitration matters, in order to decide whether the district court erred in granting the Hetlands' motion to compel.[2]

The relevant provision of the Rules, R–4, requires the "initiating party" to, "within the time period, if any, specified in the contract(s), give to the other party (the 'respondent') written notice of its intention to arbitrate (the 'demand')," with a description of the nature of the dispute, the parties, and amount involved. Commercial Arbitration Rule R–4(a)(i). The initiating party must also, *inter alia*, file two copies of the demand with an office of the American Arbitration Association. *Id.* at (a)(ii). The Hetlands concede that they failed to comply with the Rules. Having failed to

ever give notice to Lincoln of its intention to arbitrate its dispute over the PA, despite nearly six years during which time it could easily have done so, the Hetlands may not now compel arbitration.

REVERSED

---

2. At oral argument, counsel for the Hetland's maintained that the Washington Arbitration Act, RCW 7.04.010–7.04.220, should control the outcome of this case. Such a claim is without merit and defies the clear language of the contract, which states that the parties are bound, instead, by the Commercial Arbitration Rules of the American Arbitration Association. The parties agreed only to apply Washington's substantive law to the merits, and that arbitration would be conducted in the State of Washington. Even were we to apply the Washington Arbitration Act to this case, however, the Hetlands' claims would similarly fail because both relevant provisions of the Act require that notice be given to the other party prior to arbitration. RCW 7.04.040 ("a party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the court for an order directing the parties to proceed with the arbitration in accordance with their agreement. Eight days notice in writing of such application shall be served upon the party alleged to be in default"); RCW 7.04.060 ("When a controversy arises from a written agreement containing a provision to settle by arbitration a controversy ... the party demanding arbitration shall serve upon the other party, personally or by registered mail, a written notice of his intention to arbitrate ... [giving the other party 20 days to respond].")